**TRANS WORLD AIRLINES, INC.,**
Plaintiff,

v.

**Howard R. HUGHES, Hughes Tool Company and Raymond M. Holliday,**
Defendants.

No. 61 Civ. 2324.

United States District Court,
S. D. New York.

April 13, 1970.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for plaintiff; Dudley B. Tenney, Paul W. Williams, Immanuel Kohn and Marshall H. Cox, Jr., New York City, of counsel.

Donovan, Leisure, Newton & Irvine and Chester C. Davis, New York City, for defendants Hughes Tool Company and Raymond M. Holliday; James V. Hayes, Mahlon F. Perkins, Jr., Chester C. Davis, Maxwell E. Cox and Paul E. Goodspeed, New York City, of counsel.

METZNER, District Judge.

Plaintiff, Trans World Airlines, Inc., moves for the award of reasonable attorney's fees and costs of suit as the successful party in this antitrust litigation. Clayton Act § 4, 15 U.S.C. § 15. Plaintiff requests counsel fees in the sum of $10,500,000 and costs of suit in the sum of $2,230,602.

This court has already awarded damages in the sum of $137,611,435.95. 308 F.Supp. 679 (S.D.N.Y. Dec. 23, 1969).

**480**

The general rule is that the fixing of counsel fees in an antitrust action is within the discretion of the trial court, "reasonably exercised." Montague & Co. v. Lowry, 193 U.S. 38, 48, 24 S.Ct. 307, 48 L.Ed. 608 (1904). The problem of how to exercise this discretion reasonably has been the subject of much discussion. Farmington Dowel Prods. Co. v. Forster Mfg. Co., 297 F. Supp. 924 (D.Me.1969), modified on appeal, 421 F.2d 61 (1st Cir. 1969); Hanover Shoe, Inc. v. United Shoe Mach. Corp., 245 F.Supp. 258, 302 (M.D.Pa. 1965), vacated on other grounds, 377 F. 2d 776 (3d Cir. 1967), aff'd in part on other grounds, rev'd in part on other grounds, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968); Noerr Motor Freight, Inc. v. Eastern R.R. Pres. Conf., 166 F.Supp. 163, 168 (E.D.Pa.1958), aff'd, 273 F.2d 218 (3d Cir. 1959), rev'd on other grounds, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). In *Hanover Shoe, supra,* the court detailed what appear to be the generally accepted factors to be weighed in determining a reasonable attorney's fee. They are:

"(1) whether plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the Government,

(2) the standing of counsel at the bar—both counsel receiving the award and opposing counsel,

(3) time and labor spent,

(4) magnitude and complexity of the litigation,

(5) responsibility undertaken,

(6) the amount recovered,

(7) the knowledge the court has of the conferences, arguments that were presented and of work shown by the record to have been done by attorneys for the plaintiff prior to trial,

(8) what it would be reasonable for counsel to charge a victorious plaintiff."

However, these factors are only general guidelines and in the final analysis "The reasonableness of an attorney's fee can only be determined with reference to a particular case." *Noerr, supra,* at 168.

We have here an unprecedented recovery—some 30 times greater than the next highest recoveries on record. In Union Carbide & Carbon Corp. v. Nisley, 300 F.2d 561, 587 (10th Cir. 1961), petition for cert. dismissed per stipulation, Wade v. Union Carbide & Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed. 2d 46 (1962), the treble damages were $4,400,000 and in *Hanover Shoe, supra,* at 302, they were $4,239,000. Obviously the fee to be awarded will be unprecedented, but the court will attempt to insulate itself against the impact of the amount requested in determining what a reasonable attorney's fee should be in this case.

The action was instituted on June 30, 1961. On August 31, 1961 it was assigned to me for all purposes pursuant to rule 2 of the General Rules of this court. The suit was of great magnitude and complexity, and was bitterly contested from its inception. The first phase of the litigation started with defendant Hughes Tool Company conducting deposition proceedings and discovery being made by both parties. Massive sets of interrogatories were served by both parties. The deposition proceedings covered some 80 days of testimony embodied in 13,000 pages of transcript. During this period attempts were made by TWA to serve Howard Hughes so that his deposition might be taken. Toolco engaged in extensive legal maneuverings to forestall the taking of the deposition. Some of those activities are recited in 332 F.2d 602, 611–613 (2d Cir. 1964). Defendant finally moved to dismiss the complaint, which motion was denied, 214 F.Supp. 106 (S.D.N.Y.1963). The culmination of the maneuvering occurred on February 8, 1963 when counsel for Toolco stated that Hughes would not appear for deposition. He referred to "a business decision" not to proceed further with discovery proceedings, but rather to rest on the merits of the positions theretofore taken and seek judicial re-

view thereof. The Court of Appeals said:

"Hughes' deposition was absolutely essential to the proper conduct of the litigation. Yet he and Toolco seized upon every opportunity to forestall this event. To this end they demanded the production of a multitude of documents by TWA and the additional defendants and secured successive adjournments of the deposition. Indeed, Hughes and Toolco seemed to look upon the entire discovery proceedings as some sort of a game, rather than as a means of securing the just and expeditious settlement of the important matters in dispute. It was only at the very eve of the Hughes deposition— after the other litigants had been put to much delay and expense—that the defendants made a 'business decision' to terminate discovery." 332 F.2d at 615.

Twenty-one pretrial hearings were held by this court during this phase of the litigation, resulting in the entry of many orders and opinions after hearing argument and reading papers submitted on contested matters.

The first phase ended, as far as this court was concerned, with the striking of Toolco's answer for failure of Hughes to appear for deposition. A judgment by default was directed to be entered in favor of TWA against Toolco and the counterclaims asserted by Toolco against TWA were dismissed with prejudice. 32 F.R.D. 604 (S.D.N.Y.1963). Separate appeals were taken by Toolco from these two determinations (214 F.Supp. 106 and 32 F.R.D. 604), and the hearing on the amount of damages to be awarded TWA was stayed pending these appeals. The Court of Appeals did not pass upon the propriety of the entry of the default judgment against Toolco with respect to the complaint. It limited its review and affirmance to the holding that the district court had jurisdiction of the treble damage action and that issuance of certain orders by the CAB did not constitute a defense to the action. 332 F.2d 602. At the same time it sustained the dismissal of the counterclaims with prejudice because of Toolco's failure to produce Hughes for examination and its failure to produce certain papers and documents. Id. at 615. It also affirmed the granting of summary judgment to the plaintiff on the sixth counterclaim. Id. at 616. The Supreme Court granted certiorari in both appeals, 379 U.S. 912, 85 S.Ct. 261, 13 L.Ed.2d 184 (1964), and after hearing oral argument on March 3 and 4, 1965, dismissed the writs of certiorari as improvidently granted, 380 U.S. 248, 249, 85 S.Ct. 934, 13 L.Ed.2d 817 (1965).

The second phase of the litigation commenced with the hearings on the damage claims before a special master. Preliminarily, some matters of procedure were disposed of, including an appeal to this court from a ruling of the special master (38 F.R.D. 499 (S.D.N.Y. 1965)), and a motion by the defendant which in effect asked for summary judgment in its favor. This latter motion was denied on January 4, 1966. The special master thereafter directed that on May 2, 1966 plaintiff submit in written form all of the testimony it proposed to offer as its affirmative case. Plaintiff offered eight witnesses who were cross-examined by the defendant for a period of 50 days. The defendant followed the same procedure of submitting the testimony of its witnesses in written narrative form and offered four witnesses who were cross-examined by plaintiff for a total of 35 days. The testimony covered some 11,000 pages of transcript with over 800 exhibits containing 60,000 pages admitted in evidence. Experts of recognized standing in the fields of economics, engineering, finance and accounting were called by both sides. At the conclusion of the hearings before the special master, some 745 pages of briefs were submitted by the parties. The special master then rendered a 323-page report. Cross-motions addressed to the report were submitted to the court with an additional 600 pages of briefs by the parties in support of their respective positions.

The court's opinion on these motions was rendered on December 23, 1969. 308 F.Supp. 679.

In this application, counsel of record have stated that they have spent 64,000 hours on this case since they were retained by plaintiff. I have excluded some 4,000 hours that are credited to persons who worked on the case but who were not members of the bar in the year that the services were rendered. One of these persons is credited with 3300 hours over a three-year period. An additional 1400 hours have been excluded, since they are not within the period for which compensation should be considered. I have also made an adjustment of hours depending on whether, at the time the services were rendered, the person involved was a partner or associate. The result is that the firm is credited with 58,600 hours, of which 20,000 hours are allocable to partners' time and 38,600 hours allocable to associates' time. These hours were all attributable to the problems of this litigation.

One of the factors to be considered in determining a reasonable fee is whether the plaintiff had the benefit of a prior government judgment or decree. Defendant contends that the default judgment in this case gave plaintiff even greater assistance than a prior government judgment would have offered. This is an oversimplification of the problem. The default occurred only after several years of intensive litigation with appeals by defendant all the way up to the Supreme Court. If there had been a prior judgment which would have the prima facie effect afforded by § 5(a) of the Clayton Act, 15 U.S.C. § 16(a), this effort might well have been unnecessary.

Despite the default the issue as to the amount of damages was severely contested. There still remained for disposition intricate and complex issues and proof on the question of damages, which are amply reflected in the report of the special master. In addition defendant relitigated the effect of the default and the scope of judicial notice, which had previously been disposed of (38 F.R.D. 499). The length and scope of the damage hearings belie defendant's argument that "So far as that was concerned [absence of a prior judgment] their job was a cinch. The default * * * left only arithmetic to be done by plaintiff's counsel." For example, an expert offered by defendant was cross-examined for 22 days on the basis of a 656-page report which he had used in putting together his direct written testimony. Subsequently this witness made corrections in his direct testimony which produced 13 volumes of computer printouts. A supplemental report was then filed by defendant for this witness which contained 230 additional pages with more computer printouts and work papers. All of this had to be analyzed and met by plaintiff's expert witness in this one field of inquiry.

We come now to the question whether compensation may be granted for time spent in this lawsuit on matters unconnected with the award of damages. § 4 of the Clayton Act provides that:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * * and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15.

■ Defendant contends that time spent by plaintiff's counsel in seeking to obtain equitable relief may not be considered in determining the amount to be awarded as counsel fee. This is true since the allowance of attorney's fees is incidental to the statutory right to damages. Decorative Stone Co. v. Building Trades Council, 23 F.2d 426 (2d Cir.), cert. denied, 277 U.S. 594, 48 S.Ct. 530, 72 L.Ed. 1005 (1928) (request for an award of counsel fee rejected where only injunctive relief was sought); Ring v. Spina, 84 F.Supp. 403, 408 (S.D.N.Y. 1949), modified sub nom. Ring v. Authors' League of America, Inc., 186 F.2d 637 (2d Cir.), cert. denied, 341 U.S. 935,

71 S.Ct. 854, 95 L.Ed. 1363 (1951), and Alden-Rochelle, Inc. v. ASCAP, 80 F. Supp. 888, 899 (S.D.N.Y.1948) (request rejected where damages and injunction were sought, but plaintiff successful in obtaining only an injunction). In this case, however, the development of the facts was the same for both grounds of claimed relief, and the hours eliminated would merely be those devoted to spelling out the claim for an injunction and applying therefor to the court. Such time would be minimal in the overall picture, but will be taken into account in fixing the fee.

■ Defendant also contends that the time spent in defending against the counterclaims may not be considered on this application. Bergjans Farm Dairy Co. v. Sanitary Milk Producers, 241 F. Supp. 476, 489 (E.D.Mo.1965), aff'd, 368 F.2d 679 (8th Cir. 1966). This is certainly true as to the sixth counterclaim on which summary judgment was awarded plaintiff. But here again the amount of time involved on this issue is minimal. As to the other five counterclaims, they were inextricably bound up with the claims of plaintiff. Defendant itself stated that "In effect the facts asserted in the counterclaims constitute affirmative defenses to the allegations of the complaint." These affirmative defenses had to be overcome for plaintiff to succeed on its claim for damages and thus should be considered in making the fee award.

Defendant argues that the award of counsel fee should be limited to the time and effort necessary to prove items of damage sustained and may not include an award for time spent on claimed items of damage which were rejected by the trier of the facts. Union Leader Corp. v. Newspapers of New England, Inc., 218 F.Supp. 490 (D.Mass.1963), vacated on other grounds sub nom. Haverhill Gazette Co. v. Union Leader Corp., 333 F.2d 798, 801 n. 2, motion to recall mandate denied, 333 F.2d 808 (1st Cir.), cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964); Bergjans Farm Dairy Co., supra; Osborn v. Sinclair Ref. Co., 207 F.Supp. 856, 864 (D.Md. 1962), rev'd on other grounds, 324 F.2d 566 (4th Cir. 1963). These decisions are refinements of the rule set forth in the Decorative Stone, Ring and Alden-Rochelle cases, supra. However, the courts in applying this limitation pointed out that they were concerned with cases where the recovery was small in relation to an asserted large claim. It is interesting to note that in Union Leader single damages were $29,442 with an award of counsel fee of $60,000 and in Osborn single damages were $325 with an award of $14,000. See also Darden v. Besser, 257 F.2d 285 (6th Cir. 1958), where single damages were $15,000 with an award of $30,000.

■ In the instant case the award, to say the least, is substantial. The failure of the plaintiff to achieve a recovery of $510,000,000 was not due so much to the failure to prove items of damage as it was to the rejection of its theory of measuring damages. There was a reasonable basis for urging the comparative profits theory (Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946)) even though the court ultimately ruled against plaintiff on this theory.

Consequently, while reassessment must be made of the time and labor spent by plaintiff in these areas of work, this does not require extensive adjustments in the time factor. The court has been closely involved with this case since August 31, 1961 and is in a position to make a proper evaluation without further proof being called for. This is all the more true since, as indicated below, the time factor is not that crucial in a case such as this.

The firms of Cahill, Gordon, Sonnett, Reindel & Ohl, representing the plaintiff, and Donovan, Leisure, Newton & Irvine and Chester C. Davis, representing the defendants, are recognized as able and experienced counsel. In fact,

the Donovan, Leisure firm was counsel for the successful plaintiff in the *Hanover Shoe* case, *supra*. The history of the proceedings attests to the great responsibility undertaken by counsel.

Defendant points out that plaintiff's application claiming 64,000 hours of time spent on this litigation amounts to a request for $164 an hour for all of the services rendered, whether by senior partners, junior partners, senior associates or junior associates. It then refers to computations made by it of awards in other cases, translated into terms of hourly rates. The requested fee, if it is to be based on a "mix" rate of $164 an hour, could be excessive even in the City of New York. I would estimate that a "mix" rate of $75 an hour would be charged by outstanding, experienced law firms in this city. However, attributing substantial weight to an hourly rate is unfair in a case such as this where success and complexity of issues are such important factors. In *Hanover Shoe, supra,* where the treble damages of $4,239,000 were about the highest heretofore obtained, the court pointed out that it arrived at the fee award of $650,000 on bases other than hours spent by counsel. Consequently, the computation of hourly rates in that case had little meaning.

■ Similarly, a fee based on a percentage of recovery is not a satisfactory test for this case, although it appears to have been the sole one used in the *Union Carbide* case, *supra*, where the court held that "an allowance of 15 percent of the amount recovered * * * would be reasonable." 300 F.2d at 587. A percentage fee gives undue weight to the size of the recovery. In cases with small recoveries, it completely ignores professional skill and the complexity of the work involved, and could result in an insufficient award for services rendered. See *Union Leader, supra,* 218 F.Supp. at 493; *Noerr, supra,* 166 F.Supp. at 170. Conversely, where the recovery is extraordinarily high, it could result in an excessive award.

Finally, we come to the eighth factor, which has been framed by two judges as the ultimate test to be applied: that is, a fee which in the judgment of the trial court "would be reasonable for counsel to charge a victorious plaintiff. The rate is the free market price, the figure which a willing, successful client would pay a willing, successful lawyer." Cape Cod Food Prods., Inc. v. National Cranberry Ass'n, 119 F.Supp. 242, 244 (D. Mass.1954); *Farmington Dowel, supra,* 297 F.Supp. at 926. On the other hand, this test has been characterized as the outer limits of recovery. *Noerr, supra,* 166 F.Supp. at 170.

■ It seems to me that the major factors bearing on the fixing of attorneys' fees in antitrust cases are the complexity of the problems presented, the skill of counsel, and the measure of success achieved by counsel. The other factors are subsidiary to these and may be helpful in evaluating them, but neither separately nor collectively do these other factors constitute the basis for fixing the fee.

■ In measuring the success of counsel, only single damages should be considered, since that is the amount produced through the efforts of counsel. Trebling is a penalty imposed by law and automatically attaches to the damages found. Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 194 F.2d 846, 859 (8th Cir.), cert. denied, 343 U.S. 942, 72 S.Ct. 1035, 96 L. Ed. 1348 (1952); Milwaukee Towne Corp. v. Loew's, Inc., 190 F.2d 561, 571 (7th Cir. 1951), cert. denied, 342 U.S. 909, 72 S.Ct. 303, 96 L.Ed. 680 (1952). Consequently, the referable recovery here is $45,870,478.

■ As stated at the outset, the problem of how to reasonably exercise the court's discretion is a difficult one and in the final analysis it can only be resolved with reference to a particular case. A point is reached where the amount of plaintiff's recovery is unrelated to services of counsel. The large amounts involved do not add to the com-

plexity of the problems, increase the responsibilities of counsel or require greater capabilities of counsel.

After carefully reviewing the entire matter and giving effect to the adjustments discussed above, it is my considered judgment that a reasonable attorney's fee in this case is $7,500,000.

 Plaintiff requests $2,230,602 as "the cost of suit" allowable by § 4 of the Clayton Act. It concedes that, aside from attorney's fees, no case has ever gone beyond "taxable costs" which are awarded in any case to a successful party. 28 U.S.C. § 1920; Fed.R.Civ.P. 54(d). Similar requests by successful plaintiffs in private antitrust suits to be awarded their "reasonably incurred expenses of litigation" have been uniformly rejected. *Farmington Dowel, supra,* 297 F.Supp. at 930. This request is accordingly denied.

Alternatively, plaintiff requests $396,596.43 as taxable costs. Included in this sum is $28,342.63 claimed for services in connection with attempts to serve Hughes. These charges are based on payments to lawyers and private investigators in several parts of this country and Mexico City. To the extent that these payments are allocable to attempts to serve a summons on Hughes as a defendant in this action, they clearly are not taxable costs against Toolco. They also are not taxable for that portion of the services involved in attempting to serve a witness subpoena on Hughes. § 1920 provides for taxation of fees of witnesses, not the expense of searching out the witness. On the record it is clear that Hughes and Toolco were one and the same, and therefore service of notice to take deposition would have sufficed for plaintiff's purposes. Consequently, this item is disallowed.

The sum of $19,145.20 for printing costs in the Court of Appeals and the Supreme Court is not taxable, nor are the costs applicable to printing more than 50 copies of the other documents.

As to the transcript of damage hearings, plaintiff may only tax its share of the cost of transcript furnished to the special master plus three additional copies.

Finally, plaintiff has again requested moratory interest to run from the date of the report of the special master. I rejected this plea in my opinion disposing of the motions addressed to the report of the special master. I see no reason to change that disposition in which I said:

"Interest should not be allowed in antitrust actions where the statute provides for punitive damages. Treble damages compensate a plaintiff handsomely for all his losses, including loss of the use of money rightfully his." 308 F.Supp. at 696.

Judgment shall be entered accordingly. So ordered.