Lee **VANDERVELDE** et al., Plaintiffs,

v.

**PUT AND CALL BROKERS AND DEALERS ASSOCIATION, INCORPORATED** et al., Defendants.

No. 63 Civ. 3470(MP).

United States District Court,
S. D. New York.

June 6, 1972.

Malcolm A. Hoffmann, New York City, for plaintiff; by Malcolm A. Hoff-

mann, Edward A. Woolley, Bernard Zucker and David Bender, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for Put and Call Brokers and Dealers Assn., Inc., Henry Blair & Co. and Edna Blair, as Executrix of Estate of Henry Blair; by Isaac Shapiro, Adlai S. Hardin, Jr., and Mark L. Davidson, New York City, of counsel.

Murray Gottesman, New York City, for Anne S. Filer, as Executrix of Estate of Alvin V. Filer, and others.

Boskey, Boskey & Cole, New York City, for Boris M. Balson and others; by Mortimer Cole, New York City, of counsel.

George Dines, New York City, for Lawrence G. Botts and Thomas, Haab & Botts.

Paskus, Gordon & Hyman, New York City, for Godnick & Son, Inc.; by Philip H. Schaeffer, New York City, of counsel.

Bennett, Kaye & Scholly, by James D. Bennett, Rockville Centre, N. Y., for Melanie Haab,* as Executrix of Estate of Philip D. Haab.

Raphael P. Koenig, New York City, for Richard E. Linburn.

## MEMORANDUM

POLLACK, District Judge.

In this antitrust case plaintiffs have applied pursuant to the decision in favor of the plaintiffs made April 14, 1972 for allowance to plaintiffs of a "reasonable attorney's fee", 15 U.S.C. § 15, to be added to the judgment.

This action was commenced in November, 1963 and involved 12 trial days in the fall of 1971 and an additional day in January, 1972 to hear further proof on damages. The judgment held 17 of the 41 named defendants liable for violation of Section 1 of the Sherman Act by reason of the enforcement of a price-fixing rule. The claims against the remaining defendants were either dismissed on the merits or voluntarily discontinued.

* Melanie D. Haab as Exr. substituted 9/30/71.

The damages sustained were found to be $20,870 for the corporate plaintiffs, representing the value of goodwill and lost profits and $16,000 for Lee Vandervelde, representing lost salary. These damages were trebled as to the defendants other than the defendant Estates, which were held liable only for single damages. Judgment was entered accordingly on May 5, 1972. The amount of the trebled damages is $110,610.

Plaintiffs' retainer agreement with their attorneys identified three forms of compensation. It provided for payment of time charges at the rate of $40 per hour for lead counsel, $20 per hour for the time of one associate and $15 per hour for the time of the other associate, up to a maximum of $27,500. These hourly rates were below counsel's normal charge. In addition, plaintiffs agreed to pay counsel 27½% of any recovery obtained by settlement or judgment. They further agreed that any judicial award of fees which exceeded the sum of time charges actually billed should belong to counsel as part of their fee. The plaintiffs have heretofore paid their counsel the maximum of the agreed time charges and $5,000 additional in fees to predecessor counsel.

The application is not for any specific sum to be fixed by the Court as an allowance. Counsel's affidavit mentions that the case consumed 5161½ hours of their time and that their normal time charges for the services rendered would be billable at the sum of $265,367.50. They argue that an award of antitrust attorneys' fees should significantly reflect the cost of the lawyers' time occupied with the litigation, as a necessary adjunct to the Congressional policy of encouraging the private treble damage action.

The defendants resist any award based on the expenditure of time and effort on their contention that many baseless claims and theories were advanced during the lengthy course of the action which consumed enormous expenditure of time and effort unnecessarily for both sides. Defendants contend that the maximum award to plaintiffs of attorneys' fees which would be reasonable in this case is $27,500.

Self-evidently, the plaintiffs seek an allowance of counsel fees which would exceed both the single and the trebled damage awards. To accomplish this, plaintiffs suggest the need and propriety of a new approach on the whole question of remuneration of counsel in antitrust cases. They suggest that private enforcement of the antitrust laws should be encouraged by an award based on what an attorney would charge for his time, to stimulate the acceptance of unpopular causes by the Bar and reduce the burden of government in such causes.

Plaintiffs contend that the antitrust bar is most reluctant to cooperate with victims in the institution of independent antitrust prosecutions because of the time consumed in such cases and the energy and cost involved in bringing the cause through pretrial and trial against the giants of finance, trade and industry. They say that the policy of the Clayton Act will be thwarted if there is a peril that antitrust counsel could emerge with a fee reflecting only a small part of the time and energy devoted to the cause. They say that vindication of the policy of the Act requires that the attorneys' fees not be geared merely to the amount of recovery but to the public objectives achieved from the skill and effort of counsel.

In short, the plaintiffs would cast the problem before the Court in terms of rewarding the institution of this type of lawsuit for its social and economic effects rather than for its direct benefits, to assure that legal talent of quality will enter such contests.

The defendants take a decidedly different approach. They say that the traditional bases are the significant considerations in fixing the fee, i. e., the representation and results achieved considering the complexity of the issues and the skill and efficacy of counsel's representation.

The purpose of the statutory grant of attorneys' fees is to insulate a

treble damage recovery from expenditure for legal fees. Farmington Dowel Products Co. v. Forster Mfg. Co., 421 F.2d 61, 86–87, n. 57 (1st Cir. 1970). The fee authorized by the statute is one allowed to the plaintiff, not to his attorneys, and the statute requires that the Court set a "reasonable" fee. Assessment of what constitutes a "just and fair compensation for the services rendered" by plaintiff's counsel, Darden v. Besser, 257 F.2d 285, 286 (6th Cir. 1958), ultimately depends upon the circumstances of the individual litigation in which the award is sought.

■ While a number of factors have been identified as relevant to the determination of a reasonable fee, *see* Hanover Shoe, Inc. v. United Shoe Machinery Corp., 245 F.Supp. 258, 302–303 (M.D. Pa.1965), vacated on other grounds, 377 F.2d 776, 793 (3d Cir. 1967), rev'd in part on other grounds, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), the amount fixed should bear a reasonable relationship to the services required and rendered in a particular action and the result achieved by counsel's efforts therein. As Judge Metzner commented in his recent opinion in Trans World Airlines, Inc. v. Hughes, 312 F.Supp. 478, 484 (S.D.N.Y.1970), modified on other grounds, 449 F.2d 51 (2d Cir. 1971), cert. granted, 405 U.S. 915, 92 S.Ct. 960, 30 L.Ed.2d 785 (1972):

> [T]he major factors bearing on the fixing of attorneys' fees in antitrust cases are the complexity of the problems presented, the skill of counsel, and the measure of success achieved by counsel. The other factors are subsidiary to these and may be helpful in evaluating them, but neither separately nor collectively do these other factors constitute the basis for fixing the fee.

Cf. Illinois v. Harper & Row Publishers, Inc., 55 F.R.D. 221 (N.D.Ill. 1972).

The plaintiffs' attorney and his associates present impressive professional and scholastic backgrounds. Their time sheets and abundant files show prodigious time consumed by efforts applied to the case.

However, defendants argue that a major portion of that time was spent in the prosecution of claims which were overextended, baseless, ultimately held to be without merit, or against parties defendant who were not liable or for other reasons were dropped voluntarily from the suit. Defendants urge that no compensation can be properly allowed for such efforts.

■ The fee awarded should not include compensation for time expended upon theories of liability or overdrawn items of damage ultimately rejected by the trier of fact. Trans World Airlines, Inc. v. Hughes, *supra*, 312 F.Supp. at 483; Osborn v. Sinclair Refining Co., 207 F.Supp. 856, 864 (D.Md.1962), rev'd on other grounds, 324 F.2d 566 (4th Cir. 1963).

In this litigation, the presentation of the proof solely in terms of the single theory of the case mentioned below, which proved unacceptable, contributed greatly to the difficulties encountered in identifying facts upon which a recovery could actually rest.

Plaintiffs adhered doggedly to the single theory that a boycott designed to maintain the position of the Association and the New York Stock Exchange in the option market had destroyed plaintiffs' otherwise thriving option business. The attempt to shape the proof to fit this theory hindered development of those facts which were actually significant in the Association's disciplinary action and its results.

Parenthetically it may not be amiss to note that although plaintiffs cite the magnitude, scope and complexity of this litigation as factors supporting the fee application, the opening statement of plaintiffs' counsel stressed that the basic factual elements of his case were based on reasonably simple documentary evidence, stating

> . . . this is not a case where we have to look to the totality of the evidence to draw difficult inferences as to the existence or non-existence of a conspiracy; this is a case where [written] rules . . . prevail, and

the Association members . . . are supposed to abide by these rules.

The proof on the issue of liability included a diffuse mass of evidence concerning the securities and option industries and the history of the Association. This was useful but should be understood in perspective, to value its importance as a compensable service. While a sense of the historical setting of a challenged trade practice is helpful in antitrust litigation, it is a supplement, not a substitute, for presentation of the particular facts at issue, and this can usually be accomplished with paper proofs at all events.

The fact of the financial losses suffered by plaintiffs was the major issue in the litigation. The nature of plaintiffs' claim was clear from the outset: the loss of patronage of six stock exchange firms which would not deal with a suspended put and call dealer resulted in economic losses which forced cessation of business. The existence of detailed accounting records seemingly made reliance upon presumptions as to causation unnecessary, but no analysis was offered of what the mass of raw material before the Court showed to have been the volume of profitability of transactions with the six firms. Nor was the condition of the corporate capital accounts before and after the suspension ever explained, although it was clear nine months before trial that defendants would claim that the Vandervelde business was an economic failure and possessed insufficient capital to continue business in August, 1963. It was only after careful analyses, offered in an attempt to defeat plaintiffs' recovery, had presented a clearer picture of Vandervelde's earnings and operations that an accurate picture of the business history was before the Court. The theory upon which plaintiffs ultimately prevailed was based largely upon a reinterpretation of data supplied by defendants and was presented on the reopening of the case by the Court to secure essential information after all parties had rested.

Plaintiffs are, of course, not to be faulted in retrospect for selecting a theory which was ultimately rejected by the Court, nor for selection of a particular trial strategy. But this does not mean that factually unsupportable claims should be the basis for compensation which is to be determined on a standard of reasonable value.

The language employed by the Court in Bowl America, Inc. v. Fair Lanes, Inc., 299 F.Supp. 1080, 1100 (D.Md. 1969) is generally apposite here:

The case was neither very large nor very small, neither very complex nor very simple, as antitrust cases go. No doubt some of the points which now seem relatively simple required a considerable amount of time to develop, but the Court is satisfied that the case was over-prepared and that there was duplication of effort. More importantly, plaintiffs' counsel spent much time attempting to prove large items of damage which they failed to prove; the amount of damages awarded was about 10% of the amount plaintiffs claimed in their final argument.

While the amount of single damages awarded is normally considered a sound guide against which to measure the award of counsel fees to plaintiff, excessive reliance on such a measure of a fee may result in amounts which are either unreasonably high or unreasonably low. Advance Business Systems & Supply Co. v. SCM Corporation, 415 F. 2d 55 (4th Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970), modifying on other grounds, 287 F.Supp. 143, 160–161 (D.Md.1968); Union Leader Corp. v. Newspapers of New England, Inc., 218 F.Supp. 490, 492–493 (D.Mass.1963), vacated on other grounds sub nom. Haverhill Gazette Co. v. Union Leader Corp., 333 F.2d 798, 801 n. 2 (1st Cir.), cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964). As Judge Wyzanski noted in the District Court opinion in the *Union Leader* litigation, one relevant test is the expenditure of effort and skill reasonably necessary to establish the claim actually proved. 218 F.Supp. at 493.

■ Under all the facts and circumstances of this case and in the exercise of discretion, I find that the fair and reasonable allowance to plaintiffs for counsel's fees herein is $55,000. This will provide a fair "mix" of compensation for the services deemed appropriate and necessary herein.

Plaintiffs' argument in support of a higher award is that Courts should recognize the benefits to the public generally of the ruling in this action and, more importantly, the public importance of encouraging members of the Bar to prosecute treble damage actions without fear of being inadequately compensated for the time and effort required.

However, this case did not represent a significant, ground-breaking, novel or illuminating precedent. Considerations of public interest which might be properly applied in a situation where counsel secures an important precedent but only a small monetary recovery, *e. g.*, Osborn v. Sinclair Refining Co., *supra*, 207 F. Supp. at 864, are not of relevance to the award appropriate in this action.

■ Plaintiffs more general point, that an award reflecting the cost to an attorney of litigating an action such as the present one will encourage attorneys to act as private attorneys general is beside the mark for two reasons. First of all, "the importance of private actions in enforcing the antitrust laws" is one of the factors relevant in setting any fee in a treble damages action, and it has been considered herein. Advance Business Systems & Supply Co. v. SCM Corporation, *supra*, 287 F.Supp. at 161.

To suggest in addition, that an attorney should be compensated as if he were a "public defender" rather than an advocate for a private client suing to benefit himself personally—albeit in furtherance of a statute of high importance—misconstrues the reasons for the statutory allowance of fees.

■ In the *Union Leader* decision, Judge Wyzanski recognized that the policy of furthering the private damage action was not in and of itself a rationale for setting an award unrelated to the complexity and results of the case at hand:

> [I]t is doubtful [that] the allowance of an attorney's fee in excess of the losses sustained can be justified solely on the basis that 'one of the purposes of private treble damage suits is to prevent the necessity of government civil suits or prosecutions to establish and correct violations of the antitrust laws'. . . . Such a principle would be understandable in connection with the statutory allowance of an attorney's fees in connection with private litigation under many regulatory statutes. But the principle is a doubtful application under the antitrust law inasmuch as the statute does not allow an attorney's fee for procuring an injunction, but allows it only as an item of damage when losses have been proved to have been sustained by the plaintiff.

218 F.Supp. at 492–493.

It is worth noting that in *Union Leader,* the fees awarded were over twice the amount of the single damages awarded, and in that case, as in this, the Court found that part of the time for which fees were sought was expended in an attempt to prove items of recovery rejected by the Court.

■ One small matter remains. Plaintiffs have advised the Court that the discontinuance of their claims against Mathilde Kahn, Executrix of the Estate of L. P. Kahn, originally a defendant in this action, was in consideration of $1,500, paid to plaintiffs. The discontinuance submitted to the Court for its approval and signature did not disclose this payment and seemingly it was not disclosed to the other defendants or their counsel. This $1,500 should be credited against the amount for which each defendant is held liable under the judgment as supplemented hereby. Semke v. Enid Automobile Dealers Ass'n, 320 F.Supp. 445, 446–447 (W.D.Okla.1970), rev'd for new trial but specifically approved on this point, 456 F.2d 1361, 1371 (10th Cir. 1972).

Consistently with the allocation of damages in the judgment against the de-

fendants herein, the award of fees shall run against all defendants held liable to the extent of $18,333.33 and against the defendants other than Estates to an additional extent of $36,666.67, with a credit to all defendants of $1,500.

So ordered.