**WALL PRODUCTS CO. et al.,**
**Plaintiffs,**

v.

**NATIONAL GYPSUM CO. et al.,**
**Defendants.**

Civ. Nos. 46414, 46455, 46487, 47197, 48550, 48780–48782, 48787, 48789, and 48797.

United States District Court,
N. D. California.

June 13, 1973.

See also 326 F.Supp. 295.

ZIRPOLI, District Judge.

## ORDER FIXING ATTORNEYS' FEES

The court has before it the following applications for attorneys' fees filed by plaintiffs in the above numbered cases:

1. A claim by plaintiffs represented by attorneys Frederick P. Furth and John H. Boone and their associates in the sum of $1,600,000; and

2. A claim by plaintiffs represented by attorney Robert H. Weir and his associates in the sum of $600,000.

Additionally the court has before it an amendment to the above applications for attorneys' fees for plaintiffs, in which they seek the sum of $300,000 for services rendered by the law firm of Joseph L. Alioto, which services it is asserted contributed to the success of plaintiffs in the instant cases. The court is satisfied that such services by the law firm of Joseph L. Alioto did in fact contribute to the success of plaintiffs in these cases.

It thus appears that for a total treble damages recovery of $3,171,702, plaintiffs now seek attorneys' fees totaling $2,500,000.

The defendants oppose these applications and contend that the maximum reasonable value of the services of counsel for plaintiffs is $300,000.

The statute governing the award of attorneys' fees in antitrust cases is section 15 of Title 15 United States Code, which in its pertinent language provides:

Any *person who shall be injured* in his business or property by reason of anything forbidden in the antitrust laws . . . *shall recover* . . . *the cost of suit, including a reasonable attorney's fee.* (Emphasis added)

■ In its application of this statute to the instant cases the court reminds the parties that the right to recover attorneys' fees is that of the injured party, not the attorneys, and that the recoverable fees shall be reasonable attorneys' fees.

In its consideration of plaintiffs' applications the court has reviewed the various tabulations of attorneys' fees and the guidelines suggested by counsel in their respective memoranda in support of and in opposition to the applications.

These tabulations (and even the suggested guidelines) are meaningless without full and detailed knowledge of the nature and complexity of each particular case; the background of each case; the scope of the activity or conspiracy involved; the true measure of plaintiffs' success; the degree to which plaintiffs' efforts are supported by prior government proceedings; the manner in which it may or may not affect pending litigation in other cases (such as multidistrict litigation of the nature presented in related cases consolidated in one district for discovery purposes); the time employed by counsel in the preparation for and trial of each case; and the number and complexity of the issues presented and resolved in favor of plaintiffs and the number and complexity of the issues resolved against plaintiffs.

Hence the court, while not ignoring these suggested tabulations and guidelines, of necessity relies primarily on the

test suggested by the Ninth Circuit in Twentieth Century Fox Film Corporation v. Goldwyn, 328 F.2d 190, 221 (9th Cir. 1964), cert. denied, 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87, cited with approval by the same court in Perkins v. Standard Oil Company of California, 474 F.2d 549, 552 (9th Cir. 1973), wherein the court after noting certain factors [1] concluded:

> While all or most of these factors are useful as guides in fixing such fees, they provide nothing approaching a precise yardstick. In the long run, the weight to be accorded these and other factors in fixing the fees in a particular case must rest largely upon the good judgment of the district court.

In the instant cases the court has "firsthand" knowledge of the complexity of the issues presented; the true measure of plaintiffs' success; the skills of counsel; the time and effort devoted by counsel to the issues presented; and the degree to which the results of these cases may or may not affect the hundred or more pending multidistrict antitrust cases involving nationwide industry practices in the sale of gypsum wallboard.

The court has knowledge, too, of the issues on which plaintiffs prevailed and those which were ultimately rejected by the court. As Judge Pollack commented in Vandervelde v. Put and Call Brokers and Dealers Ass'n., 344 F.Supp. 157, 161 (S.D.N.Y.1972):

> Plaintiffs are, of course, not to be faulted in retrospect for selecting a theory which was ultimately rejected by the Court, nor for selection of a particular trial strategy. But this does not mean that factually unsupportable claims should be the basis for compensation which is to be determined on a standard of reasonable value.

Because of the intermixture in the present litigation of issues on which plaintiffs were successful and those which were rejected by the court, substantial difficulty arises in evaluating plaintiffs' hourly attorneys' time statistics for services rendered. The court is unable to determine with any degree of precision, and plaintiffs offer no practical method by which it can determine, how much of the time claimed was devoted to issues on which plaintiffs were successful and how much of such time was devoted to the issues rejected by the court. The issues rejected include the following:

1. Plaintiffs' claims of Robinson-Patman Act violations;

2. Plaintiffs' claims that defendants' prior verification practices were unlawful;

---

[1]. The factors noted in *Goldwyn* were: (1) whether plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the government; (2) the standing of counsel at the bar; (3) time and labor spent; (4) magnitude and complexity of the litigation; (5) responsibility undertaken; (6) the amount recovered; (7) the knowledge the court has of the conferences, arguments that were presented and of work shown by the record to have been done by attorneys for plaintiff prior to trial; (8) what it would be reasonable for counsel to charge a victorious plaintiff; and (9) what contribution shall be made by the defendant toward the fees of plaintiff's counsel.
Still another statement of the factors to be considered is that of Judge Metzner in TransWorld Airlines, Inc. v. Hughes, 312 F.

Supp. 478, 484 (S.D.N.Y.1970), modified on other grounds, 449 F.2d 51 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363, 93 S. Ct. 647, 34 L.Ed.2d 577 (1973):
[T]he major factors bearing on the fixing of attorneys' fees in antitrust cases are the complexity of the problems presented, the skill of counsel, and the measure of success achieved by counsel. The other factors are subsidiary to these and may be helpful in evaluating them, but neither separately nor collectively do these other factors constitute the basis for fixing the fee.
In Perkins v. Standard Oil, *supra*, the trial court on a total trebled damages award of $1,009,213.71 allowed plaintiffs $289,000 for the services of his attorney in prosecuting the suit.

3. Plaintiffs' attack on defendants' efforts to obtain trade practice rules from the Federal Trade Commission;

4. Plaintiffs' claims with regard to the defendants' activities relating to the Gypsum Association and other trade associations and credit associations;

5. The tort and contract counts contained in the complaints of Cover-All and Wall Products; and

6. Plaintiffs' claims for damages for alleged loss of accounts receivable, lost assets and destruction of their businesses, including complex accounting and valuation problems on which such claims were based.

■■ These rejected issues and claims account for much of the complexity of this litigation and the time devoted by all parties to the preparation for and trial of these issues and claims. Since plaintiffs may claim attorneys' fees only with relation to their winnings and not their losings, and there being no practical method by which to determine how much of the approximately 14,000 hours attorneys' time claimed by plaintiffs is attributable to the issues on which plaintiffs were successful, the court must of necessity make a just and reasonable estimate based upon all the relevant data of which it has firsthand knowledge.

■ Such knowledge acquired by the court in its supervision of every aspect of the litigation since the inception thereof commencing in early 1967, leads the court to conclude that a fair and just estimate of the attorneys' time for which plaintiffs should be compensated, namely the time of attorneys Furth, Boone, Weir, and their associates, and the time of the Alioto firm, which was given in the initial stages of this litigation, is 8,500 hours. Considering the eminent ability and skills of all counsel in these cases and their associates, it is reasonable to attribute a fee of $75 per hour for 4,000 of these hours, and $50 per hour for 4,500 of these hours, bringing the total attorneys' fees on an hourly basis to $525,000 for all counsel.

The court is mindful of the complexity of this litigation, the nationwide conspiracy to fix prices which plaintiffs successfully established without the benefit of prior government proceedings, and the significant impact that plaintiffs' success in this litigation may have on more than 100 pending multidistrict related gypsum wallboard cases. For this significant service and contribution to the enforcement of the antitrust laws plaintiffs are entitled to additional attorneys' fees of $100,000, bringing the total compensation to be recovered by plaintiffs for the services of all counsel to $625,000. These fees so fixed are, in the court's considered judgment, reasonable attorneys' fees.

Before indicating the manner in which the $625,000 now awarded plaintiffs is to be divided among the plaintiffs, the court comments briefly on the services rendered by the attorneys of the Alioto firm. The total hours employed by such attorneys was 1,250 hours. However, much of the services rendered had to do with issues on which the plaintiffs were not successful, particularly the issues with relation to the exchange of pricing information and the admissibility in evidence of the Quayle testimony and other depositions. Accordingly, that time is cut in half, and the court allows $50 per hour for all these preparation and deposition purposes, so that of the total to be paid to all plaintiffs, $31,250 shall be allocated to the Alioto firm for services rendered by the attorneys representing that firm at the time.

In making its allocation of attorneys' fees among plaintiffs in the manner herein provided, the court is mindful that most of the significant services were rendered by attorneys Furth and Boone. Accordingly, $519,000 of the attorneys' fees awarded plaintiffs shall go to the plaintiffs represented by attorneys Furth and Boone, and $106,000 of

the attorneys' fees awarded plaintiffs shall go to plaintiffs represented by attorney Weir, and shall be shared by plaintiffs in the manner following:

$284,250 for Di-Wal, Inc., et al.;

$67,950 for Cover-All Building Materials, Inc.;

$119,450 for Wall Products Company;

$47,350 for Ranier Enterprises, Inc.;

$49,750 for John Azlant, as Trustee for the Estate of California Supply Company of San Jose, Inc.;

$45,550 for E & M Supply Company;

$10,700 for Klamath Lumber Company of San Carlos.

Plaintiffs are directed to prepare appropriate judgments awarding attorneys' fees in the manner above provided. Pursuant to stipulation of counsel, it is further ordered that on the attorneys' fees herein awarded interest shall begin to run from May 15, 1973.

Should plaintiffs in other related and pending gypsum wallboard cases recover damages in further proceedings, the court in allowing attorneys' fees in such cases will undoubtedly take into consideration the size of the allowance already made in these cases and the extent to which services already rendered are utilized in the further proceedings.