**DONSON STORES, INC., et al.,
Plaintiffs,**

v.

**AMERICAN BAKERIES COMPANY
et al., Defendants.**

**No. 72 Civ. 3991.**

United States District Court,
S. D. New York.

Sept. 5, 1973.

---

Milberg & Weiss, New York City, and Harold E. Kohn, P.A., Philadelphia, Pa., for plaintiff Donson Stores, Inc.

Silverman & Harnes, New York City, for plaintiffs Martin Perlov, Sheldon Geller, and Larry Margolin.

Simpson, Thacher & Bartlett, New York City, for defendant Ward Foods, Inc.

Lovejoy, Wasson, Lundgren & Ashton, New York City, for defendant General Host Corp.

Wormser, Kiely, Allessandroni, Mahoney & McCann, New York City, for defendant ITT Continental Baking Co.

Royall, Koegel & Wells, New York City, for defendant American Bakeries Co.

BAUMAN, District Judge.

This class action was instituted by four retail grocery store operators to recover three times the overcharges resulting from an alleged conspiracy to fix the price of bread in the New York City Metropolitan area during the pe-riod July, 1966 to June, 1969. Presently before the Court is an application pursuant to Rule 23(e) of the Federal Rules of Civil Procedure seeking the Court's approval of a settlement agreement discontinuing the action in return for defendants' payment of approximately $1,225,000. In addition, plaintiffs' counsel have requested an award of 25% of the settlement fund and reimbursement of their litigation expenses, totalling $7,125.07 plus the costs of notice and administration of the settlement, approximately $7,500.00 all to be paid from the fund.

Since I have previously determined that the settlement is acceptable,[1] I pass immediately to the question of counsel fees. In this connection, a brief description of the history of this lawsuit is useful.

The original complaint was filed on September 19, 1972, one week after the filing of an indictment charging these same defendants with violating the antitrust laws by price fixing. See United States v. American Bakeries Company, et al., 72 Cr. 1010 (S.D.N.Y.). Shortly thereafter, an identical action was filed on behalf of the class by another firm of attorneys. By stipulation, the two were consolidated and a consolidated amended complaint was filed which tracked the material allegations of the indictment.

On December 1, 1972, Sarah S. Trommer and two other consumers moved to intervene individually and as representatives of a class of consumers numbering approximately 20 million. Their contention was that, since the illegal overcharges had been passed on to them, they were the only parties injured. After briefing and argument, this Court held that the consumer class had no standing to sue under the Supreme Court's decision in Hanover Shoe v. United Shoe Machinery Corp., 392 U.S.

1. On September 4, 1973 I signed an order which approved the settlements and directed the parties to consummate them according to their terms.

481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968) and denied the motion.[2]

Subsequently, defendants counterclaimed under the Robinson-Patman Act against the named retailer plaintiffs and unspecified class members. The plaintiffs moved to strike the counterclaims and persuaded me that they could not be maintained against absent class members. I required however, that the class action notice advise class members that the filing of claims might subject them to counterclaims.[3]

In the meantime, plaintiffs served extensive interrogatories as well as a comprehensive request for production of documents. Defendants resisted a number of plaintiffs' interrogatories on the grounds of attorney-client privilege and work product. After briefing and oral argument, the Court substantially sustained these objections and denied plaintiffs' motion for reargument.

In preparation for trial plaintiffs' counsel examined and analyzed all of the documents which the defendants had produced in response to grand jury subpoenas in the government case, obtained and analyzed answers to extensive interrogatories, and took the depositions of nine witnesses. Thus, it is fair to say that they aggressively prosecuted their case and I accept their representation that they were ready to try the case on July 9, 1973, the date set by the Court. I also find that the experience, skill and high standing at the bar of plaintiffs' attorneys materially contributed to the defendants' decision to settle the case.

In passing on this fee application, therefore, I regard plaintiffs' attorneys as having been able, energetic and forceful in their representation of the class. Though the issues in this case were not complex or difficult, some of them were novel. Plaintiffs' counsel

met every deadline imposed upon them by the Court and operated in an efficient manner. Nonetheless, the fact remains that only 908 hours of partner and associate time were required to prosecute this case from its commencement to settlement. Under these circumstances, I find the request for a flat 25% fee excessive.

It is true, that courts in this district and elsewhere have traditionally awarded fees in the range of 20% to 30% of recovery. See Rosenfeld v. Black, 56 F.R.D. 604 (S.D.N.Y.1972) and cases cited therein; Philadelphia Electric Co. v. Anaconda American Brass Co., 47 F.R.D. 557 (E.D.Pa.1969). However, though the award of a flat percentage relieves the court of the burden of making an evaluation of the reasonable value of the services rendered, I believe that is inappropriate in many cases. In Trans World Airlines, Inc. v. Hughes, 312 F.Supp. 478 (S.D.N.Y.1970), modified and aff'd, 449 F.2d 51 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973), the court specifically recognized this, declaring:

> A percentage fee gives undue weight to the size of the recovery. In cases with small recoveries, it completely ignores professional skill and the complexity of the work involved, and could result in an insufficient award for services rendered. . . . Conversely, where the recovery is extraordinarily high, it could result in an excessive award. 312 F.Supp. 484.

On the other hand, the amount of time spent is not the only—or even the most important—factor in granting an allowance. See In re Borgenicht, 470 F.2d 283, 284 n.1 (2d Cir. 1972). When considering the fees to be awarded a court should attempt to balance the factors set forth in the Code of Profession-

---

2. See Donson Stores, Inc. v. American Bakeries Company et al., 58 F.R.D. 481 (S.D.N.Y.1973)

3. See Donson Stores, Inc. v. American Bakeries Company et al., 58 F.R.D. 485 (S.D.N.Y.1973)

al Responsibility of the American Bar Association.[4] See 1 Pt. 2 Moore's Federal Practice, Pt. 1, § 1.47. In addition, it should recognize

> "(1) that in seeking and accepting employment as counsel for a judicially determined class an element of public service is involved; (2) the representation of the class by counsel is not a result of private enterprise but results from provision of an opportunity to represent the class by a judicial determination; and (3) the policy of the law in class actions, including antitrust actions, is to provide a motive to private counsel to represent consumers and to enforce the laws." 1 Pt. 2 Moore's Federal Practice, Pt. 1, § 1.47 (Manual For Complex Litigation)

The Courts have determined that class actions serve an important role in our legal system, and they have therefore generously compensated attorneys bringing such suits. However, if class actions are to be preserved as a useful tool, some attempt must be made by the courts to suit the award of fees to the performance of counsel in light of the size and complexity of the litigation. Attorneys are duty-bound to put their client's interests above their own. It is therefore an embarrassing moment for both the judiciary and the bar when Professor Milton Handler suggests that in many class actions the benefits inuring to the individual class members are outweighed by the costs of administration and attorney's fees. "It is obvious that in such a case it is the attorneys, not the class members, who are the true beneficiaries and the real parties in interest." Handler, The Shift From Substantive to Procedural Innovations in Antitrust Suits, 71 Colum.L.Rev. 1, 10 (1971).

Applying these princples to the case at bar, I conclude that plaintiffs' counsel are entitled to an award of $200,000. This amounts to a fee of well over $200 an hour for all services rendered, whether by senior partners, junior partners, senior associates or junior associates. To award more in this relatively uncomplicated case which was pioneered by the Government would unduly deplete the recovery of the class. The other requests for allowances are granted in full.

The plaintiffs are directed to submit an order incorporating these rulings within five days.

It is so ordered.

---

4. The provision in the Code of Professional Responsibility relating to charging and collecting fees for legal services (and impliedly in allowing fees by judicial order), is contained in Section DR 2–106, which provides in pertinent part that

> "(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
> "(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
> (3) The fee customarily charged in the locality for similar legal services.
> (4) The amount involved and the results obtained.
> (5) The time limitations imposed by the client or by the circumstances.
> (6) The nature and length of the professional relationship with the client.
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
> (8) Whether the fee is fixed or contingent."